# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

THOMAS C. BEASLEY,

    Plaintiff,

v.                                                                       CASE NO. 5:17-cv-549-Oc-02PRL

UNITED STATES OF AMERICA,

    Defendant.
_____/

## **ORDER GRANTING SUMMARY JUDGMENT**

This matter comes before the Court upon the United States' motion for summary judgment. Dkt. 50. The Court has reviewed the motion, Plaintiff's response, Dkt. 56, and the entire file. The Court grants the motion.

## **FACTUAL BACKGROUND**

The Court recites the facts in a light most favorable to Plaintiff. Plaintiff resided at USP Coleman II. He alleges two corrections officers there were "negligent in an unjustified use of force, which resulted in assault and battery." Dkt. 56 at 1. He states that this "is an administrative tort claim, due to negligence and malfeasance" brought under the doctrine of *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Dkt. 1 at 3.

Plaintiff states that he refused to submit to a search of his person, and he was taken to a lieutenant's office and informed he was going to be sent to the Special

Housing Unit as a result. Dkt. 56 at 2; Dkt. 58 at 1. He was placed in restraints. Dkt. 50-1 ¶ 2. During this meeting where he refused to be searched, Plaintiff states that he saw a technician in the hall who Plaintiff thought could help him, and Plaintiff "kicked the door to try to get [the technician's attention]." *Id.*; Dkt. 58 ¶ 5. Plaintiff states he kicked the door not to resist but to get the attention of the technician who was walking in the corridor. Dkt. 56 at 2. Plaintiff alleges that "when [Plaintiff] kicked the door C.O. Smith and C.O. Childers executed use of force against [Plaintiff]." Dkt. 59 ¶ 7. Plaintiff alleges this force was the two officers forcing him up against a wall, and his eye socket was injured when his "face came into contact and got caught on the thermostat cover" on the wall. Dkt. 56 at 2; Dkt. 58 ¶¶ 11–13. The officers forced his face into the thermostat cover where his face became "hung up" and "caught on" the cover. Dkt. 59 ¶¶ 13–14. Plaintiff states that he suffered facial lacerations around his eye.

This incident upset Plaintiff and he went to the psychological clinic. As part of his filed declaration, Plaintiff filed a prison psychologist's report on the incident. Dkt. 58 at 5. The report details a statement from Plaintiff admitting that Plaintiff was holding drugs on his person at the time he refused the body search. Dkt. 58 at 5. This is consistent with the Defendant's asserted facts. Defendant has established that Plaintiff had 11 strips of opioid hiding in his waistband. Dkt. 50 at 2; Dkt. 50-1 ¶ 4. Thus it is uncontested (based on filings by both parties) that at

the time of the incident Plaintiff 1) had refused a search of his person for suspected drugs; 2) was in fact carrying multiple doses of contraband opiates; 3) kicked the door; and 4) after kicking the door was subjected to the use of force by the officers.

Missing from Plaintiff's complaint, but contained in his subsequent pleadings, is the allegation that, back at his original housing unit, a unit officer had a pair of sunglasses stolen earlier in the week. Earlier on the same day that he was injured, Plaintiff alleges that the unit officer told Plaintiff "that if his sunglasses were not returned by 3:00 p.m., he was going to fuck [Plaintiff's] world up." Dkt. 56 at 2; Dkt. 58 at 2, 5. Plaintiff asserts that the slamming of him into the wall in the lieutenant's office was retaliation for the stolen sunglasses. No evidence to support this alleged "retaliation for sunglasses" is set forth. Plaintiff describes no admissions by the officers in the lieutenant's office, or other evidence or statements to tie these two matters together, but states that "coincidentally [the two officers in the lieutenant's office] carried out the retaliation for the unit officer's glasses being stolen." Dkt. 56 at 2. Plaintiff's cited evidence on this point is contradictory. In the psychologist's report attached to Plaintiff's declaration, Plaintiff stated:

> [Plaintiff] proceeded to explain that at around 3 p.m., the officer told him he needed to go to the lieutenant's office. "They wanted to strip search me cause they said I had drugs . . . I started snapping cause I thought it was about the glasses. . . ." [Plaintiff] saw SIS tech walking on west corridor "so I kicked the door to get his attention." [Plaintiff] proceeded to state that he was pushed against the wall. His eye got

3

pinched with a wall thermometer hook. "Look at me . . . I could loose [sic] my eye."

Dkt. 58 at 5.

The medical records that Plaintiff filed show he suffered a "1 cm" laceration to his forehead without significant width and depth, for which he got three stitches, and a second, smaller cut over his right eyebrow. Dkt. 58 at 12; Dkt. 50-2 at 2–3. His vision had no apparent impairment. Dkt. 58 at 12–14; Dkt. 50-2. The area was swollen. He was seen by an ophthalmologist with no further issues. He suffers no lasting effect but now complains of scarring. Dkt. 50-2; Dkt. 1 at 5.

Defendant concedes that the Plaintiff has exhausted his administrative remedies. Although the Plaintiff likewise has moved for summary judgment, Dkt. 57, because the Court grants Defendant's motion, Dkt. 50, no further consideration is necessary.

## DISCUSSION OF APPLICABLE LAW

Federal Rule of Civil Procedure 56(a) authorizes summary judgment when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating summary judgment is "proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

4

law.") (internal quotation marks omitted). Summary judgment is appropriate against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Applying this summary judgment standard to the Plaintiff's complaint, the complaint and pleadings of this *pro se* Plaintiff are at times unclear. He does appear at times to allege negligent infliction of injury by the officers, suggesting that they either did not see the thermostat cover or did not intend to employ it to injure him. Negligent infliction of battery, or the negligent infliction of an intentional tort, is not cognizable. Such a theory would result in dismissal for failure to state a claim. The Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), provides that the "United States may be held liable for the negligent conduct of its employees 'in the same manner and to the same extent as a private individual under like circumstances.'" *Pate v. Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1083 (11th Cir. 2004) (quoting 28 U.S.C. § 2674). As a result, in analyzing Plaintiff's claims, the Court must look to the law of the jurisdiction in

which the wrongs are alleged to have occurred, which undisputedly is the state of Florida.

Plaintiff's complaint appears to bring a claim for negligent use of excessive force against the United States under the FTCA. Plaintiff premises his claim on "negligence and malfeasance" of Bureau of Prisons ("BOP") Officers in restraining him. Dkt. 1 at 3, 5. He never asserts that the BOP Officers were not entitled to use force in this instance. *See generally* Dkt. 1. Rather, he appears to assert that the involved BOP officers negligently used such force by doing so near a thermostat in the office where the force was required, and he was accordingly injured. Dkt. 1 at 5. However, "Florida law does not recognize a cause of action for negligent use of force in making an arrest." *Diaz v. United States*, No. 17-61171-CV, 2018 WL 1886573, at *2 (S.D. Fla. Jan. 18, 2018) (citing *City of Miami v. Ross*, 695 So. 2d 486, 487 (Fla. 3d DCA 1997)); *see also Estate of Osorio v. Miami-Dade Cty.*, No. 16-20200-CIV, 2016 WL 9526401, at *2 (S.D. Fla. Oct. 28, 2016); *Landsman v. City of Vero Beach*, No. 13-14375-CIV, 2013 WL 12077480, at *4 (S.D. Fla. Dec. 12, 2013); *Southerland v. Carey*, No. 3:11-cv-1193- J-37MCR, 2013 WL 1912716, at *6 (M.D. Fla. May 9, 2013). "Florida law does not recognize such a claim because 'there is no such thing as negligent commission of an intentional tort.'" *Diaz*, 2018 WL 1886573, at *2 (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 2d DCA 1996)). This Circuit has also

6

found that "it is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009). Here, like in *Lewis*, Plaintiff alleges that the BOP Officers' "use of force was negligent, rather than intentionally excessive." *Lewis v. City of W. Palm Beach*, No. 06-81139-CIV, 2008 WL 763250, at*10 (S.D. Fla. Mar. 19, 2008), *aff'd*, 561 F.3d 1288. Further, based on the allegations, there is no "negligence component" of the officers' conduct that "pertain[s] to something other than the actual application of force . . . ." *DeGraw v. Gualtieri*, No. 818-cv-2116-T-02SPF, 2019 WL 250757, at *8 (M.D. Fla. Jan. 17, 2019) (quoting *Sanders*, 672 So. 2d at 48); *Langston v. City of N. Port*, 2015 WL 369450, at*2 (M.D. Fla. Jan. 27, 2015).

Viewed in a way to state a cause of action, and considering the favorable leeway given to the work product of *pro se* plaintiffs, the fairest reading of the complaint for Plaintiff is that it states a cause of action against the United States for assault and battery under the FTCA. The FTCA provides that plaintiffs may bring claims of "assault [and] battery" for "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); s*ee Millbrook v. United States*, 569 U.S. 50, 57 (2013) (holding the FTCA extends to intentional torts committed by law enforcement officials where the alleged conduct "arise[s] within the scope of their employment"). A battery is "the infliction of a

7

harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). "An 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984).

However, in the context of a correctional officer, a plaintiff's claim for assault or battery when made in the context of a use of force to restrain a prisoner, must first overcome the presumption of good faith afforded to an officer's use of force, whereby a corrections officer is only liable for damages if the force used is found to be clearly excessive. *See Sanders*, 672 So. 2d at 47 (applying standards from a similar Florida statute pertaining to law enforcement). Florida Statute section 944.35 provides, in pertinent part, that a government correctional officer "is authorized to apply physical force upon an inmate . . . to the extent that it reasonably appears necessary . . . [t]o prevent damage to property; [t]o quell a disturbance; or [t]o overcome physical resistance to a lawful command . . . ." Fla. Stat. § 944.35(a). Florida has a similar statute authorizing the use of non-deadly force by private correctional officers to, among other things, "defend oneself or others against physical assault," "prevent serious damage to property," and "enforce institutional regulations and orders." Fla. Stat. § 944.105(4). Thus,

8

whichever statute is used to determine whether a private individual would be liable under Florida law in these circumstances, the BOP Officers' actions in this case were authorized. *See Scheib v. Fla. Sanitarium & Benevolent Ass'n*, 759 F.2d 859, 863–64 (11th Cir. 1985)

Corrections officers are allowed to search a prisoner's body for drugs. And they may use the appropriate force necessary if he resists. In this case Plaintiff refused a lawful command to submit to a search, then escalated his behavior by kicking the door, even after he was placed in arm restraints. BOP staff reasonably believed further use of force to restrain Plaintiff against the wall and put him in leg restraints was necessary. Dkt. 50-1 ¶¶ 2, 3. The BOP Officers were authorized to use immediate force in this situation pursuant to BOP policy. *See* Dkt. 50-3, Program Statement P5566.06, Use of Force and Application of Restraints, at 2. The Corrections Officers controlled the situation due to Plaintiff's obstinate behavior. Upon searching Plaintiff after these actions it was discovered Plaintiff was hiding drugs in his waistband, which explained why Plaintiff responded the way he did to the order to allow him to be searched.

The actions taken were routine actions used to restrain a prisoner, and must be conducted in an instant, with limited time to surveil the surroundings. "The use of force by prison officials to compel compliance with security and safety needs in the prison is, unfortunately, a common if not frequent occurrence." *Maye*

9

*v. Thomas*, No. 2:12-cv-2478-LSC, 2015 WL 2408101, at *5 (N.D. Ala. May 20, 2015). While it was unfortunate that a thermostat was in the vicinity when the BOP Officers took the actions they did to further restrain Plaintiff, its presence does not convert the good faith actions of the BOP Officers into an excessive use of force. And Plaintiff does not contend that the officers sought to hurt him employing the wall-mounted thermostat cover.

This analysis is consistent with similar cases emanating from eighth amendment litigation. Under those cases, whether a correctional officer's use of force is actionable depends on "whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Mullis v. Cobb Cty.*, 202 F. App'x 364, 366 (11th Cir. 2006). In determining whether the force was applied maliciously and sadistically to cause harm, a variety of factors are considered, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002)). "From consideration of such factors, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a

knowing willingness that it occur." *Id.* (quoting *Skrtich*, 280 F.3d at 1300–01).

Prison is a harsh place, and not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). And "[n]ot every push or shove, even if it may later seem unnecessary," violates a prisoner's constitutional rights. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation omitted). Rather, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. 1, 9–10 (internal citation omitted). And courts should defer to the judgment of prison officials who typically make snap decisions concerning the use of force in pressured, tense, and threatening circumstances. *Id.* at 6; *Whitley v. Albers,* 475 U.S. 312, 319–21 (1986) (excessive force under eighth amendment requires showing of "unnecessary and wanton infliction of pain").

This case simply does not rise to an actionable level. It is undisputed that Plaintiff was smuggling opiates on his person and had refused to submit to a search of his person. Then he kicked the door in the lieutenant's office, which could reasonably be interpreted as further resistance. Plaintiff invited all necessary force to compel a search.

Plaintiff does not allege that the officers *deliberately* tried to impale his face on the protruding thermostat. The resulting event was proportionate to the need and constituted a good faith effort to maintain or restore discipline under the circumstances, rather than a malicious and sadistic intent to cause harm. *See Williams v. Slack*, 438 F. App'x 848, 851 (11th Cir. 2011) ("This Court gives great deference to prison officials acting to preserve discipline and security, especially when they make decisions at the scene of a disturbance, and thus the amount of force used was proportionate to the need for force."). Considering the relatively minor injuries in this one-time, "one-off" event that Plaintiff precipitated by opiate smuggling and refusing to be searched, the incident is not actionable under prevailing standards.

It is therefore **ORDERED AND ADJUDGED** that the United States' motion for summary judgment, Dkt. 50, is granted. Plaintiff's motion for summary judgment, Dkt. 57, is denied. The Clerk is directed to enter judgment for Defendant and to close the case.

**DONE AND ORDERED** at Ocala, Florida, on March 2, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, pro se